**Deona Renna HOOPER, Plaintiff,**

v.

**State of NORTH CAROLINA; North Carolina Central University; North Carolina Central University Campus Police; James H. Ammons, Nccu Chancellor in his official capacity; Chief Mcdonald Vick, Chief of Police in his individual and official capacity; Captain Victor O. Ingram, in his individual and official capacity; Captain Joseph N. Hilliard, in his individual and official capacity; and Lieutenant Michael Watlington, in his individual and official capacity, Defendants.**

**No. CIV.1:04 CV 00014.**

United States District Court, M.D. North Carolina.

April 13, 2005.

Curtis Scott Holmes, Richard F. Prentis, Jr., Stubbs, Cole, Breedlove, Prentis & Biggs, Patricia D. Evans, The Law Office of Florence A. Bowens, Durham, NC, for Plaintiff.

Joyce S. Rutledge, Kimberly D. Potter, Thomas J. Ziko, N.C. Department of Justice, Raleigh, NC, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Deona Renna Hooper ("Plaintiff") was terminated from employment with North Carolina Central University ("NCCU") in February 2002 upon the completion of an internal investigation regarding various allegations of misconduct. Plaintiff appealed her termination pursuant to university grievance procedures. The Chancellor of NCCU, Defendant James H. Ammons, upheld the investigatory finding that Plaintiff's termination was not based on sex discrimination or retaliation. Plaintiff then appealed to the Office of Administrative Hearings ("OAH"). On October 31, 2002, OAH dismissed Plaintiff's complaint in part, and Plaintiff made no appeal to state court despite being advised of her right to do so.

Plaintiff received a right-to-sue letter regarding her Title VII claim from the Equal Employment Opportunity Commission on October 3, 2003. Plaintiff filed her original federal complaint against the State of North Carolina, NCCU and agents thereof (collectively "Defendants") on January 12, 2004. On March 30, 2004, Defendants filed their first motion to dismiss. Plaintiff filed her first amended

complaint as a matter of right on June 3, 2004. Defendants moved to dismiss, and the court granted that motion with leave to re-file the complaint.

Plaintiff filed a second amended complaint ("SAC") on October 29, 2004, seeking declaratory and injunctive relief, compensatory damages, punitive damages, and attorney's fees. Plaintiff's SAC asserts federal claims under Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e *et seq.*), Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*), and 42 U.S.C. §§ 1983 and 1985 based on alleged gender discrimination and retaliation, and asserts various state law claims including violations of the North Carolina Constitution, breach of contract, wrongful discharge, intentional and negligent infliction of emotional distress, and violations of the wire tapping statute. The matter before the court is Defendants' renewed motion to dismiss all except Plaintiff's Title VII claims pursuant to Federal Rule of Civil Procedure 12(b).

I. *Plaintiff's Claims Asserted under 42 U.S.C. § 1983 and Title IX Withstand Defendants' Motion to Dismiss*

■ Defendants contend that the doctrine of collateral estoppel applies to bar Plaintiff from litigating her claims under 42 U.S.C. § 1983 and Title IX. Plaintiff asserts that the doctrine of collateral estoppel does not apply because NCCU's administrative process did not allow her to fully and fairly litigate and investigate her claims. Unreviewed administrative findings may have a preclusive effect in federal court only when the administrative process provides a full and fair opportunity to litigate a claim. *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) ("Accordingly, we hold that when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to liti-

gate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."); *see United States v. Utah Const. & Min. Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (finding that administrative board acted in a judicial capacity when both parties were afforded a full and fair opportunity to litigate).

The court's analysis in *Dai v. Univ. of N.C., at Chapel Hill,* 2003 WL 22113444, at *10–12 (M.D.N.C.2003), is helpful in determining the preclusive effect of NCCU's grievance process regarding Plaintiff. The plaintiff in *Dai,* a research associate professor, filed a claim with the University of North Carolina at Chapel Hill's faculty grievance committee after his termination and alleged discrimination on the basis of his age and national origin. The grievance committee determined that Dai had not been the subject of discrimination because his allegations were "unsupported by substantial and credible evidence." *Id.* at *2. Dai appealed the grievance committee's decision to the university chancellor, then to the university's board of trustees, and finally to the Board of Governors. Dai then initiated a lawsuit in state court, which was removed to the federal district court. The federal district court found that, despite the fact that the grievance committee was not vested with the same inherent powers as are Administrative Law Judges ("ALJs") by N.C. Gen.Stat. § 150B–33, the grievance process afforded Dai a full and fair opportunity to litigate his claims. *Id.* (discussing other cases involving similar fact finding administrative scenarios); *see, e.g., Elliott,* 478 U.S. at 791–92, 106 S.Ct. 3220 (university official designated as a one-time ALJ for purposes of employee's hearing and the final agency decision was rendered by another university official); *Layne v. Campbell County Dep't of Soc. Servs.,* 939 F.2d 217, 219 n. 5 (4th Cir.1991) (county employee given hearing before panel consisting of three

members chosen from a standing panel appointed by county's Board of Supervisors, one member selected by the department head, one by the grievant, and the third by the two appointees, or the state circuit court, if requested); *Long v. Laramie County Cmty. Coll. Dist.,* 840 F.2d 743, 746–47 (10th Cir.1988) (college grievance committee conducted an administrative hearing and made findings and recommendations for review and final decision by college's Board of Trustees), *cert. denied,* 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988); *Roberts v. County of Fairfax,* 937 F.Supp. 541, 544 (E.D.Va. 1996) (county employee granted hearing before county Civil Service Commission, a body appointed by the county Board of Supervisors to adjudicate employee grievances). In reaching its decision, the court noted that "[t]he key factor in each determination [of the cases cited and discussed] was whether the designated officials, regardless of their titles, made their determinations in the course of proceedings in which the employees had a full and fair opportunity to litigate the issues presented." *Dai,* 2003 WL 22113444, at *11. In expanding on what constituted a full and fair opportunity to litigate, the *Dai* court cited *Long,* 840 F.2d at 751, for the proposition that the "opportunity to present documentary and testimonial evidence, [the opportunity to] cross-examine witnesses, and [the opportunity to] have advice of counsel [are] among the reasons for finding that the administrative agencies acted in a judicial capacity within the meaning of *Elliott.*" *Id.*

■ Here, Plaintiff filed a complaint alleging sex discrimination and retaliation with NCCU's grievance committee.[1] The grievance committee found that Plaintiff's termination was justified and her claims

lacked merit. Plaintiff appealed the finding to the Chancellor, Defendant Ammons. Defendant Ammons reviewed the grievance committee's findings and issued his own findings, allegedly "including findings that plaintiff had failed to substantiate her allegations of sex discrimination and retaliation"; however, no evidence of his findings is before the court. (Defs.' Mem. Supp. Mot. Dismiss Second Am. Compl. at 4.)

Plaintiff alleges that the grievance committee's findings were deficient because, among other reasons, she was not allowed to examine witnesses directly, testimony was not under oath, there was no discovery process, she was prohibited from asking certain questions, she was prevented from presenting certain evidence, and the committee did not file findings of fact or conclusions supporting their decision to uphold Plaintiff's termination. Defendants seek to refute Plaintiff's contentions by claiming that Plaintiff had the opportunity to have the benefit of counsel, witnesses were examined and cross-examined, documentary evidence was introduced, and the proceedings were recorded. However, dismissal is inappropriate because Plaintiff has alleged facts sufficient to undermine the adequacy of the opportunity afforded her to litigate her claims through NCCU's grievance process. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."). Accordingly, the court will deny Defendants' motion to dismiss Plaintiff's claims asserted under 42 U.S.C. § 1983 and Title IX. *See also Hall v. Marion Sch. Dist.,* 31 F.3d 183, 190–92 (4th Cir.1994) (finding administrative body did

---

1. The record is unclear regarding whether Plaintiff's allegations of sex discrimination and retaliation were investigated simulta- neously with the allegations of Plaintiff's insubordination and other misconduct that led to Plaintiff's termination.

not act in judicial capacity despite "appearance of a judicial proceeding").

## II. *No Punitive Damages can be Imposed Against NCCU on Plaintiff's Title VI, Title VII, and Title IX Claims*

■ Plaintiff concedes that punitive damages are not available against government entities under Title VII and are not available in private actions enforcing Title IX. (Pl.'s Resp. Mot. Dismiss Second Am. Compl., p. 12.) Plaintiff fails to respond to the availability of punitive damages regarding Title VI. (*Id.*) Plaintiff may not assert a claim for punitive damages under Title VI, Title VII or Title IX. *See generally Efird v. Riley*, 342 F.Supp.2d 413, 430 (M.D.N.C.2004) ("a plaintiff is not entitled to recover punitive damages against a government, government agency, or political subdivision in an action brought under Title VII"); *Mercer v. Duke Univ.*, 50 Fed. Appx. 643, 644 (4th Cir.2002) ("punitive damages are not available for private actions brought under Title VI of the Civil Rights Act of 1964" and are likewise "not available for private actions brought to enforce Title IX"). Accordingly, the court will dismiss Plaintiff's claims for punitive damages asserted under Title VI, Title VII and Title IX.

## III. *Plaintiff States a Viable Claim under 42 U.S.C. § 1985(2) & (3)*

Defendants argue that Plaintiff's claim under 42 U.S.C. § 1985(2) & (3) fails to allege a viable claim because it is barred by the intracorporate immunity doctrine. Plaintiff responds that intracorporate immunity does not apply because of the applicability of the "unauthorized actions" exception and, alternatively, the "personal stake" exception.

■ A motion to dismiss for failure to state a claim upon which relief may be granted made pursuant to Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Alston v. N.C. A & T State Univ.*, 304 F.Supp.2d 774, 778 (M.D.N.C.2004). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Accordingly, the court does not consider evidence outside the pleadings in deciding a Rule 12(b)(6) motion.

■ The court finds that dismissal is inappropriate at this stage of proceedings because Plaintiff's complaint sufficiently states a claim and because the applicability of the doctrine of intracorporate immunity requires inquiry into the merits of the case. Accordingly, the court will deny Defendants' motion to dismiss on the ground of intracorporate immunity.

## IV. *Eleventh Amendment Bars Plaintiff's State Law Claims Against the State of North Carolina, NCCU, and Individual Defendants Sued in their Official Capacities*

Defendants move to dismiss Plaintiff's state law claims asserted against the State,

NCCU, and Defendants sued in their official capacities. Defendants claim that Eleventh Amendment sovereign immunity bars Plaintiff from bringing her claims against the State, NCCU, and individuals sued in their official capacities regarding breach of contract, wrongful discharge, emotional distress, and violation of the state wiretapping act.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." The Eleventh Amendment limits the jurisdiction of the federal courts to hear cases against states and state employees acting in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("We concluded ... that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."); *see also Actmedia, Inc. v. Stroh*, 830 F.2d 957, 964 (9th Cir.1986) (applying Eleventh Amendment protection where state officials were alleged to have acted in excess of their authority). A State may consent to suit in its own courts without waiving its Eleventh Amendment immunity. *See Smith v. Reeves*, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).

NCCU qualifies as a state institution. *See* N.C. Gen.Stat. §§ 150B–2(1a), 116–4; *see, e.g., Alston*, 304 F.Supp.2d at 782–83. As such, NCCU and its officials generally enjoy the protection of Eleventh Amendment immunity from liabilities that must be paid from public funds. *Huang*, 902 F.2d at 1138 ("the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities").

There are several situations in which sovereign immunity will not apply to bar plaintiff from asserting a claim. Congress may abrogate state immunity when enacting legislation pursuant to section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Alternatively, a state may "directly and affirmatively waive its Eleventh Amendment immunity in a state statute or constitutional provision" or "by voluntarily participating in federal spending programs when Congress expresses 'a clear intent to condition participation in the programs ... on a State's consent to waive its constitutional immunity.'" *Litman v. George Mason Univ.*, 186 F.3d 544, 550 (4th Cir.1999).

Here, the State, NCCU, and Defendants sued in their official capacities are protected from Plaintiff's state breach of contract claim by the Eleventh Amendment. Likewise, the State of North Carolina has not waived its sovereign immunity regarding any tort claims other than claims of negligence brought before the Industrial Commission under Article 31 of Chapter 143 of the Tort Claims Act. Contrary to Plaintiff's assertion, NCCU's purchase of insurance does not waive its sovereign immunity even in state court. *See, e.g., Wood v. N.C. State Univ.*, 147 N.C.App. 336, 346, 556 S.E.2d 38, 44 (2001) ("In summary, we conclude that N.C.G.S. § 143–291(b) does not constitute a waiver of sovereign immunity beyond that provided in N.C.G.S. § 143–291(a), and, according to the express terms of N.C.G.S. § 58–32–15, the purchase of the insurance policy at issue here did not waive the State's immunity. Therefore, the superior court does not have jurisdiction over Plaintiffs' claim against NCSU, and any such claim would proceed, if at all, under the Tort

Claims Act in the Industrial Commission."), *review denied,* 355 N.C. 292, 561 S.E.2d 887 (2002).

■ The State of North Carolina's wiretapping act contains no clear intent to waive the State's immunity. *See* N.C. Gen.Stat. § 15A–297 ("It is the intent of this Article to conform the requirements of all interceptions of wire, oral, or electronic communications ... to provisions of Chapter 119 of the United States Code, except where the context indicates a purpose to provide safeguards even more protective of individual privacy and constitutional rights."). The general reference to federal wiretapping law does not clearly evidence an intent to waive the state's Eleventh Amendment immunity in federal courts. Accordingly, the court will grant Defendants' motion to dismiss all of Plaintiff's state law claims asserted against the State, NCCU, and the individual Defendants in their official capacities.

V. *Sovereign Immunity Bars Plaintiff's State Constitutional Claims Against the State of North Carolina, NCCU, and Individual Defendants Sued in their Official Capacities Because Plaintiff Had Other Adequate State Remedies*

■ Plaintiff asserts several claims of violations of the North Carolina Constitution. Under North Carolina law, however, a plaintiff may bring a direct claim under the state constitution only if no other adequate remedy exists. *Corum v. Univ. of N.C.,* 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992); *accord Ware v. Fort,* 124 N.C.App. 613, 619, 478 S.E.2d 218, 222 (1996).

A state employee's employment status determines the appropriate avenue for appeal of a final agency decision. Under the State Personnel Act ("SPA"), N.C. Gen. Stat. § 126–1 *et seq.,* eligible employees may appeal final agency decisions to the Office of Administrative Hearings ("OAH"), the independent agency designated in the SPA. Among the state employees exempted from the SPA are "State employee[s] who [are] not ... career State employee[s] as defined by this Chapter." N.C. Gen.Stat. § 126–5(c)(1). The SPA defines a "career state employee" as an employee of the State who is "in a permanent position appointment" and who has held "a position subject to the State Personnel Act for the immediate 24 preceding months." N.C. Gen.Stat. § 126–1.1. Once the OAH renders a decision regarding a matter, the aggrieved employee may appeal that decision in superior court. *See* N.C. Gen.Stat. § 126–37(b2) ("The final decision is subject to judicial review pursuant to Article 4 of Chapter 150B of the General Statutes").

■ Employees exempt from the review provided for by the SPA appeal final agency decisions pursuant to the Administrative Procedure Act ("APA"). N.C. Gen. Stat. § 150B–43 ("Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute, in which case the review shall be made under such other statute."). Unlike other bodies subject to the APA, however, state universities are "exempt from all administrative remedies outlined in the APA" and "those who have grievances with [a state] University have available only those administrative remedies provided by the rules and regulations of the University and must exhaust those remedies before having access to the courts." *Huang v. North Carolina State Univ.,* 107 N.C.App. 710, 714, 421 S.E.2d 812, 814 (1992); *see also Maines v. City of Greensboro,* 300 N.C. 126, 133, 265 S.E.2d 155, 160 (1980) ("The

proper procedure to review a determination by an administrative agency where none is provided by statute is to petition for a writ of certiorari to the Superior Court."). Accordingly, aggrieved university employees who are ineligible under the SPA "seeking review [of a final decision] must file a petition in the Superior Court of Wake County or in the superior court of the county where the person resides." N.C. Gen.Stat. § 150B–45.

Plaintiff's status as a non-permanent state employee makes her exempt from the ambit of the SPA. Plaintiff therefore had no right to appeal NCCU's final decision to OAH, as determined by OAH. Pursuant to the APA, however, Plaintiff could have appealed NCCU's final decision directly to the superior court of the county in which she resides.[2]

Accordingly, Plaintiff is barred from raising her state constitutional claims because she had an adequate alternative state remedy which she failed to pursue. *See Ware,* 124 N.C.App. at 619, 478 S.E.2d at 222 ("plaintiff had a number of alternative state law remedies whereby he could have pursued the damages he seeks. Plaintiff could have sought judicial review of the final [Board of Governors'] decision under Chapter 150B of the [APA]. Plaintiff also could have sued the University for breach of contract."). The court will grant Defendants' motion to dismiss Plaintiff's state constitutional claims against the State, NCCU, and individual Defendants sued in their official capacities.

VI. *Plaintiff's Wrongful Discharge Claim Fails*

Plaintiff alleges a state claim for wrongful discharge. A claim for wrongful discharge is a tort claim and may be asserted only in the at-will employment context. *See Trexler v. Norfolk S. Ry. Co.,* 145 N.C.App. 466, 470, 550 S.E.2d 540, 542 (2001) (finding that the tort of wrongful termination applies in the at-will context). As discussed above, sovereign immunity bars Plaintiff's claims against the State, NCCU, and the individual Defendants sued in their official capacities. *See, e.g., Oleyar v. County of Durham,* 336 F.Supp.2d 512, 520 (M.D.N.C.2004) (sovereign immunity barred county employee's wrongful discharge claim); *Dai,* 2003 WL 22113444, at *5 n. 5 (2003) ("because North Carolina has indeed retained sovereign immunity in its own courts from tort claims, the State is likewise entitled to Eleventh Amendment immunity when common law tort claims, such as wrongful discharge, that seek monetary damages are brought into federal court through pendent jurisdiction"); *Paquette v. County of Durham,* 155 N.C.App. 415, 419, 573 S.E.2d 715, 717 (2002) (holding that claim for wrongful termination in violation of public policy based on alleged racial discrimination was barred by sovereign immunity).

Plaintiff also asserts a wrongful discharge claim against several Defendants in their individual capacities. The North Carolina Court of Appeals has held, however, that an action for wrongful discharge will lie only against an employer, and not against individual employees. *Sides v. Duke Hosp.,* 74 N.C.App. 331, 343, 328 S.E.2d 818, 826–27 (1985), *disc. review denied,* 314 N.C. 331, 333 S.E.2d 490 (1985). Although some courts have allowed wrongful discharge claims against officers of the employer to stand, they

**2.** The record does not indicate that Plaintiff had appeal rights within the university system above the NCCU chancellor. (*See* Defs.' Mem. Supp. Mot. Dismiss, Ex. 1.) *But see Dai,* 2003 WL 22113444, at *2 (plaintiff appealed chancellor's decision to the University's Board of Trustees and then to the Board of Governors). OAH informed Plaintiff of her right to seek redress in superior court.

have done so without explicitly considering this issue. *E.g., Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 354, 416 S.E.2d 166, 170 (1992). Moreover, the courts that have considered this issue have followed *Sides. E.g., Myers v. Town of Landis*, 957 F.Supp. 762, 771 (M.D.N.C.1996); *Phillips v. J.P. Stevens & Co.*, 827 F.Supp. 349, 353 (M.D.N.C.1993). Accordingly, none of the Defendants are subject to individual liability to Plaintiff on the wrongful discharge claim. Therefore, the court will grant Defendants' motion to dismiss Plaintiff's wrongful discharge claim.

VII. *Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress but States a Claim for Intentional Infliction of Emotional Distress Against the Individual Defendants*

Defendants assert that Plaintiff failed to state a claim for both intentional and negligent infliction of emotional distress. As discussed above, sovereign immunity bars such tort claims against the State, NCCU, and individual Defendants in their official capacities. Accordingly, the court will analyze Plaintiff's claims only as to Defendants in their individual capacities.

 To state a claim for negligent infliction of emotional distress, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Defendants argue that Plaintiff failed to state a claim for negligent infliction of emotional distress because Plaintiff failed to allege that any of the individual Defendants acted negligently. Plaintiff failed to respond to Defendants' argument regarding negligent infliction of emotional distress. The court agrees that Plaintiff failed to state a claim of negligent infliction of emotional distress and will grant Defendants' motion regarding Plaintiff's negligent infliction of emotional distress claim.

 "The essential elements of an action for intentional infliction of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quoting *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981)). In asserting an intentional infliction of emotional distress claim, a plaintiff must allege acts "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986); *see also Dai*, 2003 WL 22113444, at *8.

 Plaintiff's intentional infliction of emotional distress claim against the Defendants named in their individual capacities is based on the following allegations: (1) Defendants Watlington and Ingram ordered Plaintiff to violate state law by withholding a lawfully issued citation; (2) Defendant officers assisted a student in filing a false complaint against Plaintiff; (3) Defendant officers charged Plaintiff with insubordination for failing to obey an unlawful order to withhold lawful process; (4) Defendant officers falsely accused Plaintiff of leaving the scene of an accident; (5) Defendant Watlington fabricated evidence against Plaintiff that she failed to report the accident involving her cruiser; (6) Defendant officers withheld evidence showing that Plaintiff reported the accident; (7) Defendant officers falsified and redacted

police reports and report logs to impugn Plaintiff and cover-up their misconduct; (8) Defendant Vick demoted and transferred Plaintiff when she indicated that she wanted to file a claim for sexual discrimination; (9) Defendants Vick and Ammons engaged in unlawful wiretapping and surveillance of Plaintiff.

The acts alleged extend beyond "mere insults, indignities, threats, . . . [or] occasional acts that are definitely inconsiderate or unkind." *Hogan*, 79 N.C.App. at 493, 340 S.E.2d at 123. Plaintiff sufficiently forecasts evidence of "extreme and outrageous" behavior that may enable Plaintiff to recover for intentional infliction of emotional distress. Accordingly, the court will deny Defendants' motion to dismiss Plaintiff's claim of intentional infliction of emotional distress against the Defendants in their individual capacities.

VIII. *Plaintiff Sufficiently States a Claim Against Individual Defendants under the North Carolina Wiretapping Statute*

■ As discussed above, Plaintiff is barred from asserting a claim under the wiretapping statute against the State, NCCU, and the Defendants sued in their official capacities because of sovereign immunity. A factual inquiry is necessary to determine if the Defendants sued in their individual capacity are shielded from liability by any law enforcement exclusion in the statute. To the extent Plaintiff asserts claims against Defendants in their individual capacities for violating North Carolina's wiretapping statute, Defendants' motion to dismiss will be denied.

IX. *Plaintiff Did Not Have a Vested Property Interest in her Police Officer I Position*

■ To invoke Due Process protection under the United States Constitution, an employee must demonstrate a "property interest" in continued employment under State law. *See Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("sufficiency of the claim of entitlement must be decided by reference to state law"); *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (discussing procedural due process protection of employment property interests). "Under North Carolina law, an employee has a protected 'property' interest in continued employment only if the employee can show a legitimate claim to continued employment under a contract, a state statute or a local ordinance." *Peace v. Employment Sec. Comm'n,* 349 N.C. 315, 321, 507 S.E.2d 272, 277 (1998). The SPA dictates that only "career State employees" are protected from termination but for "just cause." N.C. Gen.Stat. § 126–35. The SPA defines a "career state employee" as one who "(1) Is in a permanent position appointment; and (2) Has been continuously employed by the State of North Carolina in a position subject to the State Personnel Act for the immediate 24 preceding months." N.C. Gen.Stat. § 126–1.1.

Plaintiff was employed for eleven months by NCCU, thus failing the twenty-four-month prerequisite to "career employee" status. Plaintiff also has not alleged facts sufficient to demonstrate a protected interest in continued employment by NCCU as required by *Peace.* Accordingly, Plaintiff is not afforded the "just cause" protection from termination and does not have a property interest afforded Due Process protection.

CONCLUSION

For the foregoing reasons, the court will: (1) deny Defendants' motion to dismiss Plaintiff's claims based on 42 U.S.C. § 1983 and Title IX; (2) grant Defendants' motion to dismiss Plaintiff's claims for pu-

nitive damages under Title VI, Title VII and Title IX; (3) deny Defendants' motion to dismiss Plaintiff's claims asserted under 42 U.S.C. § 1985(2) & (3); (4) grant Defendants' motion to dismiss all of Plaintiff's state law claims against the State of North Carolina, NCCU, and the individual Defendants sued in their official capacities; (5) grant Defendants' motion to dismiss Plaintiff's state constitutional claims against the State of North Carolina, NCCU, and the individual Defendants sued in their official capacities; (6) grant Defendants' motion to dismiss Plaintiff's wrongful discharge claim against Defendants named in their individual capacities; (7) deny Defendants' motion to dismiss regarding Plaintiff's intentional infliction of emotional distress claim against Defendants named in their individual capacities; (8) grant Defendants' motion to dismiss regarding Plaintiff's negligent infliction of emotional distress claim against Defendants named in their individual capacities; (9) deny Defendants' motion to dismiss regarding Plaintiff's wiretap claim against Defendants named in their individual capacities.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.