FILED
United States Court of Appeals
Tenth Circuit

December 31, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THE ESTATE OF CARLOS BASSATT,
by CARLOS BASSATT JR., Personal
Representative,

Plaintiff - Appellant,

v.

No. 13-1244

SCHOOL DISTRICT NO. 1 IN THE
CITY AND COUNTY OF DENVER;
PATRICK SANCHEZ,

Defendants - Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:11-CV-01761-RPM-BNB)**

Richard C. LaFond, Richard LaFond P.C., Boulder, Colorado, Plaintiff-Appellant.

Holly Ortiz, Semple, Farrington & Everall, P.C., Denver, CO (Michael Brent
Case, Semple, Farrington & Everall, P.C., Denver, CO, with her on the briefs) for
Defendants-Appellees.

Before **KELLY**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.

**PHILLIPS**, Circuit Judge.

In 2007, Carlos Bassatt was accused by a school district employee of masturbating in the parking lot of West High School ("West") in Denver during school hours. Consequently, he was terminated from his student teaching placement with School District No. 1 of the City and County of Denver ("District") for misconduct. Although the Denver District Attorney's Office chose not to prosecute Bassatt, West's principal terminated him from his student teaching placement with the District out of concern for student safety. Bassatt filed a discrimination complaint with the Colorado Civil Rights Commission ("CCRC"). Bassatt later filed a lawsuit alleging retaliatory discharge in the United States District Court for the District of Colorado. Bassatt died during district court proceedings, and his estate ("Estate") was substituted as the plaintiff. The district court granted summary judgment for the District, finding that the Estate failed to show that the principal's reason for firing Bassatt was pretextual.

The Estate appeals the district court's finding that it failed to show pretext, which is required in a Title VII retaliation claim. It contends that there are sufficient facts on the issue of pretext to create a triable issue of material fact, thus precluding summary judgment. Since this is an appeal from a final decision of the district court, we exercise jurisdiction under 28 U.S.C. § 1291. We AFFIRM the district court.

FACTS

## A. General Background

Carlos Bassatt, a Puerto Rican man, was working toward his Masters of Education degree at Regis University. Beginning in September 2007, Bassatt began student teaching and substitute teaching at West. Student teachers are not employed by the district.

On September 14, 2007, Bassatt left the school building, got into his Ford Focus, and reclined his seat. Maria Iams, a District employee, arrived shortly thereafter in her car and parked in the space next to him. Her bag fell between the passenger's seat and the door. As she propped herself up on the center console to retrieve it, she saw a man masturbating in the Ford Focus. She had never seen the man before and did not know that he worked at West. She reported the incident to a colleague, explaining that she had seen a Hispanic man masturbating in a car parked next to her car. Her colleague reported the incident to Denver Police Officer Vincente Damian, West's resource officer.[1] Damian questioned Iams and reviewed surveillance video of the parking area. He also asked Iams to review it. She was able to identify the car in the video as the Ford Focus that had been parked next to her in the lot, but she was unable to identify the man walking to

---

[1] School resource officers are law enforcement officers who are responsible for providing security and crime prevention services in schools.

and entering the car as the man whom she saw masturbating. However, the Dean of Students at West, Dan Trujillo, was able to identify the man in the video as Bassatt after he reviewed it. The video reflects that the man walking to his car, identified as Bassatt, was wearing a dark polo shirt. Iams provided Damian with a written statement about the events in question. Damian prepared a written statement and an incident report.

Patrick Sanchez, West's principal, was notified of the incident that same day. Sanchez is Latino and is an advocate for Latino educators. He founded the Mentoring Institute for Latino Educators ("MILES"). On September 17, 2007, Sanchez and Damian met with Bassatt and informed him that he had been accused of masturbating in his car in the West parking lot. Bassatt denied the allegations. Sanchez informed Bassatt that he was being placed on administrative leave pending further investigation. After speaking with Iams and Bassatt, Damian believed that Iams was telling the truth.

At their initial meeting, Damian gave Bassatt a summons to appear at the Denver Police Department the next day. Although Bassatt went to the Police Department immediately after the meeting, the police were not yet prepared to talk to him. Bassatt called a lawyer later that day, who advised him not to speak with the police until the lawyer could be present with him. The following day, Bassatt appeared at the Denver Police Department to tell the detective that he

would not interview until his lawyer could be present. He then left. Although the Denver District Attorney's Office considered charging Bassatt, it ultimately declined to prosecute the case.

Upon learning that no charges were being filed against Bassatt, Sanchez sent Bassatt an email on September 19, 2007, stating, "We have the all clear for you to return to West in good standing[;] the investigation did not determine that the allegations were founded." J.A. vol. IV at 1463. After sending the email, Sanchez spoke with Bart Muller, the District's Director of Labor Relations, who told Sanchez that the District Attorney's decision not to prosecute did not prevent the District from taking action against Bassett for his alleged misconduct. Muller also stressed to Sanchez the importance of student safety. Muller reported that Iams, the accuser, was an exemplary employee.

Sanchez and Muller decided to meet with Bassatt again. On September 26, 2007, they met with Bassatt and his wife, who was a teacher at West. Bassatt admitted that he had been reclining in his car in the parking space next to Iams, but he denied that he had been masturbating. Bassatt then declared that the accusation was racially motivated and that the District's decision to end Bassatt's placement at West was discriminatory. On September 27, 2007, the District advised Bassatt that he was terminated from his student teaching placement.

**B. The Legal Proceedings**

Following this sequence of events, Bassatt filed charges against the District claiming race discrimination and retaliation with the CCRC under Colorado Revised Statute § 24-34-402(1)(a), (1)(e) (2012). A two-day hearing was held before a state Administrative Law Judge ("ALJ") of the CCRC. On October 15, 2009, the ALJ issued her initial decision in Case No. 2009-007 ("Initial Decision"), concluding that Bassatt had established neither discrimination nor retaliation because he had failed to: (1) establish the existence of circumstances giving rise to an inference of unlawful discrimination, and (2) establish a prima facie case of retaliation.

Bassatt appealed the ALJ's finding regarding his retaliation claim to the CCRC under Colorado Revised Statute § 24-4-105(15)(a) (2014).[2] On August 23, 2010, the CCRC issued a final order ("Final Order I"), reversing the ALJ's conclusion on the retaliation claim. Final Order I found that Bassatt had in fact established a prima facie case of retaliation and, further, that the District's reason for terminating Bassatt was pretextual.

The District appealed Final Order I to the Colorado Court of Appeals. On October 11, 2011, the court issued an opinion affirming the CCRC's finding that Bassatt had established a prima facie case of retaliation. *Bassatt v. School Dist.*

---

[2] When parties wish to appeal an ALJ's initial decision in a discrimination case, they file a designation of the record and transcript with the CCRC. They may then appeal that decision directly to the Colorado Court of Appeals. Colo. Rev. Stat. § 24-4-106(11); *id.* § 24-34-307(2).

*No. 1 in the City and Cnty. of Denver*, No. 10CA2066, 2011 WL 4983684 (Colo. Ct. App. Oct. 20, 2011). However, the court did not consider the question of pretext or the ultimate issue of retaliation. After reversing "in part the [CCRC's] rulings on the ALJ's findings of fact," it remanded the case back to the CCRC "to reconsider the ultimate issue of whether the [District's] termination of Bassatt constituted discriminatory retaliation . . . ." J.A. vol. IV at 1527.

In July 2011, before the CCRC had reconsidered the case on remand after the Colorado Court of Appeals' decision, Bassatt filed suit against the District in the United States District Court for the District of Colorado. Bassatt raised a number of claims in his complaint, including unlawful retaliation by the District in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, and retaliation by the District in breach of his student teacher agreement in violation of 42 U.S.C. §§ 1981 and 1983. That lawsuit forms the basis of this appeal. Then on September 28, 2012, the CCRC issued its second order ("Final Order II"). The CCRC concluded in Final Order II that Bassatt had established that the District had terminated him in retaliation for his accusations of discrimination. It concluded specifically that the District did not provide a legitimate, non-discriminatory reason for its action. Final Order II was never reviewed on appeal.

In August 2012, Bassatt passed away. The Estate of Carlos Bassatt, by Carlos Bassatt, Jr., personal representative, was substituted as plaintiff ("Estate").

On May 17, 2013, the district court granted the District's motion for summary judgment. It concluded that the Estate had failed to make a sufficient showing of pretext to defeat summary judgment on its Title VII retaliation claim. It also dismissed the Estate's §§ 1981 and 1983 claims because Bassatt did not have a contract with the District to student teach, which would provide for continued employment and establish a property right protected by due process. Bassatt appealed the court's grant of summary judgment.

## DISCUSSION

Before addressing the substance of Bassatt's arguments, we review the preclusive effects of state court and state administrative decisions, as that will dictate our own review of the following issues. The findings of a state administrative agency generally do not bind federal courts. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *Bolling v. City & Cnty. of Denver, Colo*, 790 F.2d 67, 68 (10th Cir. 1986). However, federal courts must give preclusive effect to factual and legal determinations made by state courts when reviewing state administrative agency actions. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982) (holding that a

state court decision affirming a state agency determination on a claim of employment discrimination is entitled to preclusive effect); *Bolling*, 790 F.2d at 68 (holding that federal courts are required by the Full Faith and Credit provision of 28 U.S.C. § 1738 to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered" (quoting *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984))).

Thus, we are bound by the Colorado Court of Appeals decision reviewing Final Order I because the state agency's determination was reviewed on appeal by a state court. *See Bolling*, 790 F.2d at 68; *Stone v. Dep't of Aviation*, 290 F. App'x 117, 123 (10th Cir. 2008) (unpublished) (applying collateral estoppel to state court case reviewing state agency decision). The Colorado Court of Appeals held that the Estate had established a prima facie case of retaliation, but it did not make any conclusions on the ultimate issue of retaliation. The Estate argues that we are also bound by Final Order II, which ultimately did find pretext and retaliation. Final Order II, however, was never reviewed by any state court. Thus, we are not bound by this Order. *See Bolling*, 790 F.2d at 68.

## A. Retaliation Claim

"To prevail on a Title VII retaliation claim, a plaintiff must establish that retaliation played a part in the employment decision . . . ." *Fye v. Okla. Corp.*

- 9 -

*Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008). She may do so in one of two ways. She may directly show that "retaliatory animus" played a motivating role in the employment decision. *Id.* at 1225; *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1075, *as recognized in Burrage v. United States*, 134 S. Ct. 881, 889 n.4 (2014). Or, where a plaintiff cannot do so, she may instead rely on the three-part *McDonnell Douglas* burden-shifting approach to show that the employer's proffered reason for termination was merely a pretext. *Fye*, 516 F.3d at 1225. The plaintiff must persuade the court that the "employer's reason is unworthy of belief." *Id.* at 1225.

Under the *McDonnell Douglas* approach, a plaintiff must first make out a prima facie case of retaliation by showing "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (internal quotation marks and citations omitted). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate and facially non-discriminatory reason for its decision. *Id.* at 1211. If the employer satisfies this burden, then the plaintiff must establish by a preponderance of the evidence that

the employer's reasons were merely a pretext for discrimination. *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005).

We are bound by the Colorado Court of Appeals' conclusion that the Estate made out a prima facie case of retaliation. Therefore, we need only determine whether (1) the District proffered a legitimate, non-discriminatory reason for its decision and (2) the Estate has demonstrated that this reason was a mere pretext for discrimination.

It is clear to us that the District provided a non-discriminatory reason for terminating Bassatt—his alleged misconduct in the parking lot. As such, we need only concern ourselves with the final step in the Title VII action: pretext. On this issue, the district court found that:

> Sanchez made a credibility determination as to Iams' statements and concluded that any doubt should be resolved against Bassatt after being advised by Muller of the need to assure the safety of the students. That is a legitimate business decision. The plaintiff has failed to show that it is pretextual.

*Estate of Bassatt v. Sch. Dist. No. 1 in the City & Cnty. of Denver*, No. 1:11-CV-01761-RPM, 2013 WL 2153105, at *4 (D. Colo. May 17, 2013) (unpublished). Given that this determination was made at the summary judgment stage, our review is de novo. *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014). We will affirm only if the record, considered in the light most favorable to the non-moving party, establishes no genuine issue of material fact. *Jones v.*

*Denver Pub. Sch.*, 427 F.3d 1315, 1318 (10th Cir. 2005). After undertaking this review, we agree with the district court that the District is entitled to summary judgment because the Estate does not provide sufficient evidence to raise a triable issue on pretext.

As to pretext, the Estate argues that the district court erred both by believing Sanchez's reason for taking action against Bassatt and by failing to recognize the persuasive value of Final Order II. We disagree with both arguments.

A plaintiff demonstrates pretext by producing evidence of "such weaknesses . . . in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir. 1996)). The Estate puts forth three reasons in support of its pretext argument: (1) the district court's error in assigning the burden of proof to the plaintiff; (2) the insufficient evidence for Sanchez to make a credibility determination; and (3) the persuasive value of Final Order II. We consider and dismiss each in turn.

### 1. Burden of Proof

The Estate argues that the district court erred by assigning the burden of proof on the pretext question to the non-moving party—the Estate. Although it is generally true that the moving party has the burden to show that there is no

- 12 -

genuine issue of material fact on a motion for summary judgment, the same is not true in the context of an adverse employment decision. When an employment decision is made based on alleged misconduct, the plaintiff must present evidence that rebuts the defendant's claim that the misconduct was the motivating factor for the employment decision. *See Santana v. City and Cnty. of Denver*, 488 F.3d 860, 866 (10th Cir. 2007) (holding that plaintiff did not "raise a genuine doubt about Defendant's motivation" on pretext claim and thus summary judgment for defendant was proper) (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1200 (10th Cir. 2000)). Thus, the district court properly required the Estate to show evidence of Sanchez's pretext.

## 2. Credibility Decision

The Estate also argues that the district court erred in finding that Sanchez made a permissible and sincere credibility determination in believing Iams; it contends that there was insufficient evidence supporting Iams's credibility.[3] The Estate targets the District's allegedly inadequate investigation and the

---

[3] The Estate confuses Sanchez's own credibility determination with the district court's finding that this determination was not a pretext for his actions. In its opening brief, the Estate declares that "[t]he court made a credibility determination that it believed Sanchez and accepts his proffered reason for firing Bassatt." Appellant's Br. at 48. But it is mistaken. In the next sentence, it states: "The court wrote that 'Principal Sanchez made a credibility determination as to Iams' statements and concluded that any doubt should be resolved against Bassatt.'" *Id.* This latter sentence shows that the district court did not make a credibility determination. Based on the evidence, it rightly concluded that the Estate did not raise a genuine issue of material fact as to pretext.

discrepancies in Iams' report to demonstrate that Sanchez did not have enough information in front of him to credibly determine that Iams had seen Bassatt masturbating in the parking lot.

First, the Estate asserts that Sanchez inadequately investigated the incident. It offers four reasons why the investigation was inadequate: (1) after Bassatt had returned to his student teaching responsibilities, Muller told Sanchez that additional investigation was needed, but nothing else occurred except the additional meeting with Bassatt and his wife; (2) the District did not produce documentation of an independent investigation, which is against normal practice; (3) Sanchez's investigation was so suspect that he could not have credibly believed Iams's allegation; and (4) neither Sanchez nor Muller considered Bassett's record or background before terminating his student teacher placement.

The failure to conduct a fair investigation can raise an inference of pretext. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 542 (10th Cir. 2014). While the Estate relies on *Smothers* for this proposition, there the employer never heard the plaintiff's side of the story before firing him. *Id.* That is not the case here. Sanchez heard both Iams's and Bassatt's accounts of what happened and had to make a decision. As the principal, he had to weigh numerous competing interests, including the safety of his students. Sanchez's decision to believe Iams over Bassatt, when there was no direct evidence either way, is not evidence of pretext.

The Estate also relies on *Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th Cir. 2008), for the same proposition, but this case too provides little support. In *Trujillo*, the court stated that "[a]lthough the couple together [had] served PacifiCorp for 28 years, they were never given the benefit of the doubt during the investigation. Rather, the company seemingly relied only on evidence to the detriment of the [plaintiffs] and failed to interview key witnesses." *Id.* at 1160. Conversely, Bassatt had not worked at West for even a month before the incident occurred. And, while the District's investigation conceivably could have been more thorough, Sanchez and Muller did interview the key witnesses—Iams, Damian, and Bassatt himself. Again, nothing about the District's investigation suggests deficiencies from which we could infer pretext.

The Estate further argues that the discrepancies in Iams's report created a genuine issue of material fact on pretext. It points out that Iams could not identify Bassatt as the man in the Ford Focus and that her description of the man's clothing did not match what Bassatt was wearing in the surveillance video.[4] While discrepancies exist, Bassatt admitted that he was the person reclined in the driver's seat of the Ford Focus.

---

[4] We note, however, that Dean Trujillo identified the man walking to the Ford Focus as Bassatt in the surveillance video, and that the man was wearing a dark polo shirt in that video.

Regardless, the Estate focuses on the wrong question. The proper inquiry is not whether the inadequacy of the investigation foreclosed Sanchez from the possibility of believing Bassatt. Rather, the relevant inquiry is whether Sanchez subjectively, but honestly, believed that Bassatt had engaged in the misconduct. *See Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004). Here, we infer from Bassatt's testimony before the ALJ that Bassatt believed that Sanchez honestly believed that Bassatt had engaged in the misconduct.[5]

Finally, the Estate argues on appeal that Sanchez's first email to Bassatt, inviting him back to work, is evidence that Sanchez did not truly believe Bassatt had engaged in the misconduct. But this argument fails in light of the Colorado Court of Appeals' decision, which specifically reviewed and rejected this position. That decision affirmed the ALJ's finding that the e-mail "does not provide evidence of discriminatory intent or an ulterior motive." J.A. vol. III at 1281. Additionally, we believe that Sanchez only sent the email because he believed that the District Attorney's decision not to pursue charges bound him from acting against Bassett based on Iams's allegations. Once he determined he was not bound by the District Attorney's decision, he reconsidered his options.

---

[5] *See infra* note 6 and accompanying text. In addition, Sanchez knew that Muller also believed that Bassatt had engaged in the wrongdoing. Damian also believed that Bassatt had committed the misconduct.

- 16 -

We agree with the district court that the Estate fell short of establishing pretext. It provided no evidence to the district court that Sanchez was motivated to take action based on anything other than Bassatt's alleged misconduct. In fact, as we read the record, Bassatt acknowledged that Sanchez genuinely believed Iams's allegations.[6] Further, Sanchez is Latino, and we conclude that this undermines any suggestion of pretext. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (holding that plaintiff failed to show pretext in part because decision makers were in the same protected class as plaintiff). Sanchez is even a founding member of a group that advocates for Latinos in education. Thus, we cannot agree with the Estate that Sanchez had insufficient information in front of him to make a credibility determination regarding Bassatt's behavior.

---

[6] During his hearing before the ALJ, Bassatt said:

> And Mr. Muller kept asking me, well, why would she be making those allegations if it's not true? And that's when I told Mr. Muller, You know what, you're very discriminating against me because you already have your mind made up that I did it based on your conversation and what you're saying, all right. That just because I'm a Hispanic male, you already believe that I did it? That's discrimination against me.
> So Mr. Sanchez turned around and told me, Carlos, that is not helping, so don't do that. That's when I said, Sir, but it's the truth, okay. He presented himself the whole time as I was – you know, as I did it.

J.A. vol. II at 617. Bassatt's lawyer told the court that during the meeting between Bassatt and Sanchez, Bassatt said to Sanchez, "Look, you're taking the word of this woman over mine without doing an investigation." J.A. vol. IV at 1760.

### *3. CCRC's Final Order II*

Finally, the Estate argues that CCRC's Final Order II provides evidence of pretext sufficient to satisfy the Estate's burden on summary judgment. Final Order II was decided on remand from the Colorado Court of Appeals, and it found that Bassatt had established pretext. That order was never reviewed by the Colorado Court of Appeals, but the Estate argues that we should still give it persuasive weight. In support, the Estate cites *Long v. Laramie Cnty. Cmty. Coll. Dist.*, 840 F.2d 743 (10th Cir. 1988), for the proposition that a state administrative agency's judgment is persuasive evidence for us. To the contrary however, *Long* merely allows a district court to *consider* an unreviewed administrative decision. *Id.* at 749. Here, the district court did consider Final Order II and found it was "neither binding nor persuasive." J.A. vol. IV at 1749. This decision is not an error of law.

## B. Sections 1981 and 1983 Claims

The Estate also brought retaliation claims under 42 U.S.C. §§ 1981 and 1983. Because we conclude that the district court properly dismissed the Title VII retaliation claim for lack of a pretext showing, the Estate's §§ 1981 and 1983 claims are defeated because they too are subject to the *McDonnell Douglas* burden-shifting analysis. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

But even if the Estate were able to show pretext, it still could not prevail on its §§ 1981 and 1983 claims because Bassatt did not have an employment contract with the District. As pleaded, the §§ 1981 and 1983 claims concern only the student-teacher agreement. The Estate argues that this agreement qualifies as an employment contract. After reviewing the relevant documents, the district court concluded that they did not amount to an employment contract with the District. We agree.

To establish a claim under § 1981, a plaintiff must show, in addition to the *McDonnell Douglas* requirements, that he had an employment contract with the employer.[7] *Flores v. City and Cnty. of Denver*, 30 F. App'x 816, 819 (10th Cir. 2002) (unpublished). The Estate suggests that the following documents, taken together, constituted an employment contract: "Request for student teacher placement"; the "Confirmation Form" approving the student teacher placement; the "Student Teacher Agreement"; the "Learning Contract for Student Teaching"; and the "Student Teacher Checklist." Appellant's Br. at 41. None of these create a contract with the District.[8]

---

[7] Although the Estate discussed § 1983 in its argument heading and legal standard, it never actually briefed the issue so we do not discuss the merits.

[8] We also reject the Estate's contention that Bassatt's student teaching placement constituted an at-will position for the purposes of bringing a cause of action under § 1981. While this court recognizes that an at-will employee without an employment contract is not precluded from bringing a cause of action under § 1981, we conclude that

The legal status of teachers in Colorado is governed by the Cooperative Teacher Education Act. *See* Colo. Rev. Stat. § 22-62-101 (2014). That Act authorizes school boards to enter into "written, contractual agreements or arrangements with any college or university for the purpose of providing field experiences in teacher education." *Id.* § 22-62-103(1). The statute provides that "[t]he duties and responsibilities of the student teacher shall be determined by mutual agreement between the school district and the authorized representative of the college." *Id.* § 22-62-105(1).

In this case, none of the documents referenced by the Estate are signed by anyone with the authority to bind the District to an employment contract. The Confirmation Form is signed by Bassatt, Sanchez, and two cooperating teachers. The Student Teacher Agreement is signed only by Bassatt. The Learning Contract is signed by Bassatt, a cooperating teacher, and a Regis supervisor. And the Student Teacher checklist is signed only by Bassatt. No one from the school board signed a single document. None of these documents, either individually or taken together, constitute an employment contract between West and Bassatt.

---

Bassatt's student teaching placement would not qualify as an at-will position. In *Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999), we held that a contractual relationship existed when the plaintiff rendered her services in exchange for her employer's payment of wages. Here, in comparison, Bassatt is not simply providing his teaching services in exchange for payment by the District; his primary purpose for teaching is to gain teaching experience and satisfy the practical hours requirement for his master's program. Therefore, we see no contractual relationship for the purpose of § 1981.

We need not address the Estate's argument that Sanchez was the final policymaker for the District because we resolve the §§ 1981 and 1983 claims in favor of the District on two other grounds: (1) the Estate failed to show that Sanchez's reason for terminating Bassatt was pretext; and (2) Bassatt did not have an employment contract with the District. Thus, the argument over who is the final policymaker is irrelevant for our purposes.[9]

## CONCLUSION

We hold that the district court properly granted summary judgment in favor of the District because the Estate did not provide evidence sufficient to raise a triable issue on pretext as a matter of law. As such, we AFFIRM the district court.

---

[9] Because we hold that the Estate fails to show pretext in its Title VII retaliation claim and its §§ 1981 and 1983 claims, we need not reach its final argument that non-economic damages survive Bassatt's death.