**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3505
_____

FELIX A. RODRIGUEZ,
                                        Appellant

v.

FORTHRIGHT
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-12-cv-04642)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2016

Before: VANASKIE, SCIRICA and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 19, 2016)
_____

OPINION*
_____

PER CURIAM

        Felix A. Rodriguez appeals from the District Court's order entering summary

judgment against him and in favor of his former employer, Forthright.  We will affirm.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

# I.

Forthright is the doing-business name of a company that administers an arbitration program in New Jersey (among other things). Forthright employed Rodriguez as a case coordinator, and he also performed certain Information Technology ("IT") functions. In that capacity, he had access to Forthright's computer system as an administrator and had access to other employees' e-mail accounts.

In August 2011, approximately four years into his employment, Rodriguez came forward with 14 e-mails purportedly sent by two Forthright supervisors between themselves and to other employees containing what he claimed were derogatory references to his Hispanic race and origin. Rodriguez acknowledged that he had accessed these employees' e-mail accounts in order to search for e-mails containing his name because he was tired of his co-workers "gossiping" about him.

Roberta Mueller, Forthright's Vice President of Human Resources, commenced an investigation into the e-mails. Mueller's investigation lasted approximately two months and included several interviews of Rodriguez, the authors and recipients of the e-mails, and other Forthright employees. Mueller also reviewed the available electronic data. Mueller ultimately concluded that Rodriguez himself had altered the e-mails by adding the derogatory references about which he complained. Forthright then terminated Rodriguez's employment in October 2011 on the ground that his alteration of the e-mails violated company policy.

Rodriguez later filed suit pro se against Forthright in state court. Rodriguez invoked Title VII of the Civil Rights Act of 1964 and claimed that Forthright terminated him (1) because he is Hispanic and (2) in retaliation for reporting the e-mails and for filing an earlier complaint with the Equal Employment Opportunity Commission during Mueller's investigation. Forthright removed the suit to federal court, and the parties engaged in discovery. During discovery, Forthright retained an IT expert to conduct another electronic investigation some three years after the events in question. Forthright's expert concluded that Rodriguez had indeed altered the e-mails.

The parties ultimately filed cross motions for summary judgment. The District Court heard argument and then denied Rodriguez's motion but granted Forthright's motion and entered summary judgment in its favor. The District Court set forth its reasons for doing so on the record. Rodriguez appeals.[1]

## II.

We will affirm, though our reasons for doing so differ somewhat from the District

---

[1] Forthright asserted counterclaims against Rodriguez, but it has since withdrawn them with prejudice and cannot pursue them in the future. Thus, we have jurisdiction under 28 U.S.C. § 1291. See Melo v. Hafer, 912 F.2d 628, 633 n.2 (3d Cir. 1990). On appeal, Rodriguez challenges only the entry of summary judgment against him and not the denial of his own motion for summary judgment. Our review of the District Court's entry of summary judgment is plenary. See Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 465 n.4 (3d Cir. 2015). In conducting that review, we view the evidence in the light most favorable to Rodriguez as the non-moving party and will affirm only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(a)).

3

Court's. As the District Court recognized, Rodriguez's claims of discrimination and retaliation proceed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jones v. S.E. Pa. Transp. Auth., 796 F.3d 323, 325-26 (3d Cir. 2015) (Title VII retaliation); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (Title VII discrimination).

Under that framework, Rodriquez bore the initial burden of making out a prima facie case by producing evidence sufficient to raise an inference that his termination was the product of discrimination or retaliation. See Fuentes, 32 F.3d at 763. The burden of production then shifted to Forthright to articulate a legitimate reason for his termination. See id. Finally, the burden shifted back to Rodriguez to produce evidence from which a reasonable jury could conclude either that (1) Forthright's proffered reason for his termination was pretextual or (2) discrimination or retaliation likely was a motivating cause for the termination. See id. at 763-64. We briefly address evidence regarding discrimination at the close of this section, but only pretext is properly at issue here.

The District Court concluded that Rodriguez made out a prima facie case, which we will assume for present purposes, and that Forthright proffered a legitimate reason for his termination—i.e., his alteration of employee e-mails in violation of company policy. The District Court further concluded that Rodriguez failed to adduce evidence permitting the reasonable conclusion that Forthright's proffered reason was pretextual. The District Court did so for two reasons. First, the District Court relied on the opinion of Forthright's litigation expert that Rodriguez had altered the e-mails, and it noted that

4

Rodriguez did not obtain an expert of his own or otherwise adduce evidence calling the expert's conclusion into question. Second, the District Court relied on the investigation leading to Rodriguez's termination.

The parties devote much of their briefing on appeal to issues regarding Forthright's expert. Their focus on the expert, and the District Court's reliance on the expert, are largely misplaced. The question in assessing Forthright's proffered legitimate reason for terminating Rodriguez is whether a reasonable jury could believe that the reason was pretextual at the time it was made. The opinion of a litigation expert who conducted an independent investigation some three years after the fact seems to us largely irrelevant for that purpose. See Keller v. ORIX Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc); see also McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 360 (1995) ("The employer could not have been motivated by knowledge it did not have[.]"); Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 309 (3d Cir. 2012) ("A post hoc ground for termination . . . is irrelevant to the question of causation.") (quotation marks omitted).[2]

Thus, we turn to the second ground on which Forthright and the District Court relied—Mueller's investigation and conclusion that Rodriguez altered the e-mails. The District Court did not address the investigation or Rodriguez's arguments concerning the

---

[2] We do not suggest that Forthright's expert was irrelevant to any issue in the case. Forthright argues, for example, that Rodriguez cannot make out a prima facie case of either discrimination or retaliation if he in fact altered the e-mails and that its expert supports the conclusion that he did so. In light of our disposition, we need not address

5

investigation in detail.  Having exercised our plenary review, however, we agree that Rodriguez has not adduced any evidence on that point suggesting that Forthright's decision to terminate him for altering the e-mails was pretextual.

Rodriguez raises numerous arguments challenging the legitimacy of Mueller's investigation and its result.  Rodriguez's opening brief, however, is completely devoid of the references to the record required by Fed. R. App. P. 28(a)(8)(A).  We recognize that Rodriguez has filed his brief pro se, but he is a relatively sophisticated litigant by pro se standards and, "[a]t the end of the day," pro se litigants "must abide by the same rules that apply to all other litigants."  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).  Thus, we could deem these arguments waived.

Nevertheless, we have reviewed Rodriquez's arguments and conclude that they lack merit.  "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken[.]"  Fuentes, 32 F.3d at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence[.]" Id. (quotation marks omitted).  Such weaknesses can be shown when an employer does not conduct a fair investigation or bases its decision on facially inaccurate or unreliable evidence.  See Estate of Bassatt v. Sch. Dist. No. 1, 775 F.3d 1233, 1240 (10th Cir. 2014); Kowalski v. L & F Prods., 82 F.3d 1283, 1289-90 (3d Cir. 1996).

---

those issues or Rodriguez's arguments regarding the expert on appeal.

In this case, Mueller conducted a two-month investigation and compiled a comprehensive 20-page report, which Forthright made part of the summary judgment record. (ECF No. 63-8 at 2-21.) This report details the steps that led Mueller to conclude that Rodriguez had altered the e-mails. Those steps included conducting numerous interviews of Rodriguez himself, the authors and recipients of the e-mails, and other Forthright employees. Those steps also included consultations with Forthright's IT staff and an outside IT consultant.

Rodriguez does not contest that Mueller took any of the steps detailed in her report. Rodriguez nevertheless contends that Mueller's investigation was so deficient that a reasonable jury could conclude that Forthright's decision to terminate him was pretextual. Rodriguez raises three principal challenges in this regard. None has merit.

First, Rodriguez appears to argue that the investigation was incomplete. He relies on Mueller's deposition testimony (which he purports to quote but does not cite) that she "did the best she could" but could not investigate everything. Rodriguez, however, has not specified which additional steps he believes that Mueller should have taken. And even if her investigation "conceivably could have been more thorough," Mueller "did interview the key witnesses," including the authors of the e-mails and Rodriguez himself. Estate of Bassatt, 775 F.3d at 1240; cf. Smothers v. Solvay Chems., Inc., 740 F.3d 530, 542 (10th Cir. 2014) (finding evidence of pretext where employer relied solely on "one-sided information" without giving employee "a chance to explain or deny th[e] allegations"). Rodriguez does not argue otherwise.

7

Second, Rodriguez argues that the result of the investigation was predetermined because Forthright placed him on paid leave but allowed the two subjects of the investigation to remain in active employment and to "assist" in that investigation. Rodriguez neither raises any specific arguments in this regard nor cites anything of record suggesting that these circumstances could be viewed as evidence of pretext.

Our review of the record reveals that they cannot. Forthright did not place Rodriguez on leave immediately. Instead, it placed him on leave approximately one month into its investigation. (ECF No. 63-8 at 18.) It did so four days after Rodriguez had attempted to access Forthright's system remotely as an administrator on his day off, three days after discovering that Rodriguez's hard drive was missing, and the day that it forced a change of all employees' passwords for security reasons on the advice of counsel. (Id. at 17-18.) Thus, according to Forthright, it advised Rodriguez that it was placing him on leave (and removing his access to its system) because its investigation involved its computer system and e-mail documentation. (Id. at 18.)

Rodriguez has not acknowledged any of these circumstances or adduced any evidence calling Forthright's reliance on them into question. He also does not allege or present any evidence that the conduct of the two supervisors whom Forthright allowed to remain actively employed—neither of whom is alleged to have the administrator access to the system that Rodriguez had—raised any similar concerns. As for his assertion that Forthright allowed the supervisors to "assist" in the investigation, Rodriguez does not specify the nature of that "assistance." From our review of the record, that assistance

8

appears to have consisted of nothing more than submitting to interviews and a computer inspection <u>before</u> Forthright placed Rodriguez on leave. (<u>Id.</u> at 4, 10-16.) Rodriguez can hardly complain that Forthright took those steps as part of its investigation. <u>See</u> <u>Estate of Bassatt</u>, 775 F.3d at 1240. Mueller's report states that she also continued to advise the supervisors of the status of her investigation, but she continued to advise Rodriguez of the status as well. These circumstances do not suggest that the results of her investigation were predetermined in any way.

Finally, Rodriguez argues that he did not really alter the e-mails and that Forthright did not have sufficient evidence to conclude that he did. In order to suggest pretext, however, it is not enough to present evidence that the outcome of the investigation was wrong. <u>See</u> <u>Fuentes</u>, 32 F.3d at 765. Instead, the evidence must suggest that the outcome was "so plainly wrong that it cannot have been the employer's real reason." <u>Keller</u>, 130 F.3d at 1109. Rodriguez has adduced no such evidence.

Rodriquez's primary argument in this regard is that it was "impossible" for Mueller to conclude that he altered the e-mails. This is so, according to Rodriguez, because Forthright's outside IT consultant told her that Forthright's Exchange server did not have auditing enabled and would not permit him to determine who altered the e-mails.[3] Thus, Rodriguez appears to suggest that there is no proof that he altered the e-mails and that Mueller had no good-faith basis for concluding that he did.

---

[3] The consultant actually advised Forthright that "there wasn't much data that can be of value on the Exchange server" and that, if Forthright retained him, "there was a very real

9

Mueller's investigation, however, revealed other information at least plausibly suggesting that Rodriguez had altered the e-mails. Among other things, the e-mails themselves bore obvious signs of alteration, and Rodriguez admitted to Mueller both that he had accessed the e-mails and that he knew how to alter them. (ECF No. 63-8 at 3, 16.) Mueller also found multiple versions of the e-mails and determined that Rodriguez, before coming forward with them, forwarded versions without the derogatory content to his personal e-mail account. (Id. at 20.) Mueller also interviewed the authors of the e-mails, who admitted they sent versions of them but denied having written the specific derogatory comments about which Rodriguez complained. (ECF No. 63-8 at 11-16.)[4]

Rodriguez has neither meaningfully contested any of the foregoing nor adduced any evidence suggesting that he did not alter the e-mails as Mueller concluded. Thus, Rodriguez has adduced no evidence suggesting that Mueller's conclusion was even wrong, let alone that it was "so plainly wrong that it cannot have been the employer's real reason" for terminating him. Keller, 130 F.3d at 1109; see also Estate of Bassatt, 775

possibility we would pay for their services and get no helpful data in return." (ECF No. 63-8 at 19.) Rodriguez does not argue that Forthright should have retained the consultant anyway. Instead, he argues that the consultant's statement shows that it was impossible to determine who altered the e-mails. That is not what the consultant said, but we will assume for Rodriguez's benefit that it was impossible for Forthright to conclusively determine who altered the e-mails through the use of electronic data at that time.

[4] Rodriguez relies on the two supervisor's admissions that they sent the original e-mails, but he has not adduced any evidence suggesting, as he claims, that they also admitted including the derogatory comments specifically at issue. To the contrary, they denied having done so. (ECF No. 63-8 at 11-16.)

F.3d at 1240 (holding that an employer's "decision to believe [one employee over another], when there was no direct evidence either way, is not evidence of pretext"). Thus, we agree with the District Court that Rodriguez did not adduce sufficient evidence on the issue of pretext to survive summary judgment.

The issue of pretext aside, Rodriguez does not argue that he presented sufficient other evidence that discrimination or retaliation likely was a motivating cause of his termination. See Fuentes, 32 F.3d at 764. In the District Court, Rodriguez argued that Forthright treated him differently than non-Hispanics because (1) it disciplined non-Hispanics less harshly than him despite their own violations of Forthright's policies and (2) it paid certain non-Hispanics more than him. The District Court concluded that these allegations were sufficient to make out a prima facie case.[5]

In his opening brief, Rodriguez refers briefly to that conclusion and argues that it was inconsistent for the District Court to then conclude at step three of the McDonnell Douglas inquiry that he did not present evidence suggesting that his termination was the result of discrimination. (Appellant's Br. at 33.) That argument misapprehends the McDonnell Douglas burden-shifting framework, which the District Court properly employed. Rodriguez has not otherwise raised any argument based on this alleged

_____

[5] Forthright disputes both points and argues that (1) it disciplined non-Hispanics less harshly because their violations of company policy were different and less serious than Rodriguez's, and (2) the employees who earned more than Rodriguez were not similarly situated. We need not resolve these issues in light of our disposition, but we note that the record tends to support Forthright's arguments.

11

disparate treatment, let alone argued that he presented evidence on that point sufficient to survive summary judgment at step three of the McDonnell Douglas analysis.[6]

## III.

We will briefly address three other issues that Rodriguez raises on appeal. First, Rodriguez argues that Forthright spoliated evidence and that the District Court should have drawn an adverse inference against it at the summary judgment stage. By way of background, Forthright filed a motion to amend its answer to assert counterclaims based on a document that it discovered in Rodriguez's cubicle following his termination. On Rodriguez's motion, a Magistrate Judge granted Rodriguez permission to have the original document fingerprinted to determine whether there was any evidence that it had been in his possession. Shortly thereafter, however, Forthright asserted that it could not locate the original document (though both parties retained a copy).

Rodriguez then requested leave to file a "motion for spoliation of evidence." (ECF No. 51.) The Magistrate Judge apparently addressed that issue at a telephonic conference (ECF No. 52), and then denied the request without prejudice (ECF No. 53). According to Rodriguez, the Magistrate Judge did so on the ground that spoliation should

---

[6] In a somewhat related vein, Rodriguez argues that the District Court erred by granting summary judgment without addressing his purported stand-alone claims of disparate-treatment and hostile-environment discrimination. As Forthright argues, however, Rodriguez's complaint contains no such claims. (ECF No. 1-2.) Rodriguez did file a motion to amend his complaint, and his proposed amended complaint could be liberally construed to assert such claims. (ECF No. 36.) The Magistrate Judge denied his motion as futile for failure to state a claim, but Rodriguez neither challenged that ruling before the District Court nor even mentions it on appeal.

be addressed only after the summary judgment stage. Rodriguez argues that the District Court should have drawn the spoliation inference in considering summary judgment.

It is true that spoliation can be considered at the summary judgment stage. See Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995). But Rodriguez has not preserved this issue,[7] and it lacks merit in any event. Rodriguez argued below that Forthright's alleged spoliation of this evidence prejudiced only his ability to defend against Forthright's counterclaims. He did not argue that it prejudiced his ability to defend against summary judgment on his claims, and he raises nothing on appeal suggesting that it did. Rodriguez retained a copy of this document, so the only adverse inference to which he might have been entitled would have been an inference that the original document did not bear his fingerprints. That inference would not have saved his claims from summary judgment.[8]

Second, Rodriguez raises various arguments addressed to the District Court's consideration of the parties' evidence at the summary judgment stage. Our plenary

---

[7] Rodriguez claims that the Magistrate Judge addressed this issue at the telephonic conference, which the docket indicates was recorded, but we have no way to review this issue because Rodriguez has not had the conference transcribed as required by Fed. R. App. P. 10(b)(1). Rodriguez also did not appeal the Magistrate Judge's ruling to the District Court. See Tabron v. Grace, 6 F.3d 147, 153 n.2 (3d Cir. 1993).

[8] Rodriguez also refers on appeal to the disappearance of his computer hard drive during Forthright's investigation and to the absence of any recordings of Mueller's interviews. Rodriguez did not mention the hard drive in his "motion for spoliation," and he has not cited any evidence suggesting that Forthright was responsible for its disappearance in any event. Rodriguez did mention the absence of recordings, but he submitted no evidence contesting Forthright's claim that recordings were not made and did not exist.

13

review has cured any potential error in this regard, but we perceive no such error in any event.  Rodriguez argues, for example, that the District Court admitted at the hearing that it did not review all of his submissions.  He refers to the District Court's statement regarding the e-mails in question that "I do believe I read some of them, I'm not sure I read all of them[.]"  (ECF No. 80 at 15.)  The contents of the e-mails, however, were not in dispute.  The most logical inference from this statement is that the District Court, faced with the parties' voluminous submissions, focused on those matters that <u>were</u> in dispute.

Finally, Rodriguez argues that the mere fact that he and Forthright dispute whether he altered the e-mails means that there is genuine issue of material fact precluding summary judgment.  That is not the case.  As explained above, the question is not whether Rodriguez actually altered the e-mails.  Instead, the question is whether it was pretextual for Forthright to rely on its conclusion that he did.  Rodriguez adduced no evidence reasonably suggesting that it was.  We have reviewed Rodriguez's remaining arguments and conclude that they do not require discussion.

IV.

For these reasons, we will affirm the judgment of the District Court.  Forthright's motion to strike or seal a portion of Rodriguez's reply brief is granted as set forth in the margin.[9]

---

[9] Appellant's reply brief is to be sealed in light of the statements that appear in the third and fourth sentences of Section 5(b) of the reply brief, and appellant's response in opposition to appellee's motion to strike or seal is to be sealed in light of the statements that appear in the first sentence of the second paragraph and the first, second and third

sentences of the third paragraph on page two of appellant's response to the motion to strike or seal. The Clerk is directed to designate appellant's reply brief and response to the motion to strike or seal as sealed documents on this Court's docket. The Clerk is further directed to enter on this Court's docket redacted versions of the reply brief and response to the motion to strike or seal removing the portions of those documents specified above.