Filed 9/28/20  Castro v. Walt Disney Parks and Resorts U.S. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MINDELYNN CASTRO, | |
| Plaintiff and Appellant, | G057245 |
| v. | (Super. Ct. No. 30-2017-00931299) |
| WALT DISNEY PARKS AND RESORTS U.S., INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Theordore R. Howard, Judge.  Affirmed.

Law Offices of Sandra C. Munoz and Sandra C. Munoz for Plaintiff and Appellant.

Mitchell Silberberg & Knupp, Emma Luevano and Bethanie F. Thau for Defendant and Respondent.

\*          \*          \*

Defendant and respondent Walt Disney Parks and Resorts U.S., Inc. (Disney), fired plaintiff and appellant Mindelynn Castro from her job as a Disneyland custodian. Castro filed a lawsuit primarily alleging Disney had discriminated against her based on her sex/gender in violation of the Fair Employment and Housing Act (FEHA). (Govt. Code, § 12940 et seq.)[1] Disney moved for summary judgment. Disney presented evidence it fired Castro because she physically fought with another employee (her boyfriend) while at work, and she had marijuana paraphernalia in her possession.

The trial court granted Disney's motion for summary judgment because: "There is simply no hint anywhere that [Disney] made the decision to fire [Castro] based on a disdain, or distrust, of females." We agree and affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

In January 2010, Disney hired Castro as an at-will custodial employee. Disney provided Castro with a policy manual identifying acts that could result in her immediate termination, including "'any act of violence or other behavior that poses a risk of harm to the employee or others.'" The manual also prohibited the possession or use of drugs on company property. In December 2014, Castro began dating Jimmy Ledezma, who also worked the same custodial shift.

On March 30, 2016, Castro and Ledezma verbally argued throughout the day about a variety of topics. At the end of their shifts (near midnight), tensions escalated to the point where Castro and Ledezma had a physical altercation with each other. There were no witnesses. Disney management was notified, and Castro and Ledezma were both escorted to the main security office.

---

[1] Further undesignated statutory references are to the Government Code.

At the security office, two managers inspected Castro's "custodial pouch" she had been wearing. The managers reported they had discovered a wooden pipe in Castro's pouch that smelled of marijuana and a marijuana vaporizer cartridge. One of the custodial managers reported that she saw scratches on Ledezma's face, but she did not see any injuries on Castro. Security personnel contacted the police, who arrested Castro on a charge of domestic violence.

Disney placed Castro and Ledezma on investigatory suspension and conducted an internal investigation. Castro and Ledezma provided written statements and were interviewed by Disney investigators. Castro and Ledezma also provided text messages to Disney concerning their text conversation between them during the day of the incident; Castro did not provide as many text messages as Ledezma provided. A security investigations manager reviewed the statements, the interviews, and other relevant evidence; the manager concluded that Castro was the aggressor and Ledezma was acting in self-defense. Disney terminated Castro's employment and gave Ledezma a 15-day suspension.

Castro filed a complaint against Disney alleging: 1) discrimination based on sex/gender; 2) harassment based on sex/gender; 3) retaliation; 4) failure to prevent discrimination and harassment; and 5) wrongful termination. Disney filed a motion for summary judgment and/or adjudication. Castro conceded she lacked support for her harassment claim. As to the remaining causes of action, the trial court granted Disney's motion for summary judgment. Castro appeals.

II

DISCUSSION

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th

3

826, 844.) The moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists. (*Id.* at p. 845.) If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts. (*Ibid*.)

We review the trial court's decision de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.) "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence, . . . summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

Castro contends the trial court erred when it granted Disney summary judgment as to the following causes of action: A) discrimination based on sex/gender; B) retaliation; and C) two derivative claims (failure to prevent discrimination and wrongful termination). We shall address each contention in turn.

## A. *Discrimination Based on Sex/Gender*

It is unlawful for an employer to terminate an employee based on her sex/gender. (§ 12940, subds. (a) & (c).) In a civil lawsuit, a plaintiff can establish a prima facie case of unlawful discrimination by providing evidence that: 1) she was a member of a protected class; 2) she was performing competently at her work; 3) she suffered an adverse employment action; and 4) some circumstance suggests discriminatory motive behind the adverse employment action. (*Guz v. Bechtel National Inc*. (2000) 24 Cal.4th 317, 354-355 (*Guz*).)

In a summary judgment motion, an employer/defendant must satisfy an initial burden of proving the claim has no merit by showing either that one or more elements of the prima facie case is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors. (*Harris v. City of Santa Monica* (2013) 56

4

Cal.4th 203, 224.) That is, a reason that is facially unrelated to prohibited bias. (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1181.) If a defendant meets this burden, then the plaintiff then must show that defendant's reason for firing her was pretextual (or at least that reasonable minds might differ). (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861.)

Here, Disney presented evidence it terminated Castro because she violated its policies prohibiting employees from engaging in violence while at work and its policy prohibiting employees from possessing drugs on its property. These are legitimate, nondiscriminatory reasons. (See *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 168 ["Evidence the employer based the termination on the employee's workplace threats or violence rebuts the employee's prima facie showing by establishing the employer properly terminated the employee, even if the employee is otherwise qualified to perform the job"]; see also *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 926-927 ["FEHA does not require employers to accommodate the use of" marijuana].)

In short, we find that Disney met its burden to show that it terminated Castro's employment for legitimate, nondiscriminatory reasons. Therefore, the burden shifts to Castro to show that Disney's proffered reason for terminating her employment was discriminatory or pretextual.

"If the employer sustains [its] burden, the presumption of discrimination disappears. [Citations.] The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." (*Guz*, *supra*, 24 Cal.4th at p. 356.) "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." (*Ibid*.) "[T]here must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions. [Citation.] Accordingly, . . . an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence

as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Id*. at pp. 360-361.)

Here, Castro largely argues she and Ledezma were "similarly situated," and because Disney fired her but only suspended Ledezma, there is a triable issue of fact as to whether Disney had a discriminatory motive in her termination. We disagree.

"To establish discrimination based on disparate discipline, it must appear 'that the misconduct for which the employer discharged the plaintiff was the same or similar to what a similarly situated employee engaged in, but that the employer did not discipline the other employee similarly.'" (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1535-1536.) "'Different types and degrees of misconduct may warrant different types and degrees of discipline . . . .'" (*Ibid*.)

The record discloses that Disney conducted an extensive internal investigation, including: an interview of Castro; a written statement from Castro; an interview of Ledezma; a written statement from Ledezma; an interview of a coworker; a written statement from the coworker; a review of the police report; a review of Disneyland's records; a security office report; a written statement from the service manager; a written statement from the custodial manager; a written statement from the dispatcher; a review of the text messages between Castro and Ledezma; a consideration of the reported contents of Castro's work pouch; and a review of Ledezma's temporary domestic violence restraining order.

Disney's security investigations manager concluded that Castro was the aggressor, while Ledezma was acting in self-defense. Further, Castro was reportedly in possession of marijuana, while Ledezma was not. Because their respective misconduct was different, Castro and Ledezma were not "similarly situated." Thus, their resulting disparate discipline does not reasonably support an inference of discrimination.

Castro makes numerous factual arguments, including that Disney conducted a flawed investigation, she was not the aggressor, and she was not knowingly

6

in possession of marijuana.  But these arguments miss the mark.  Castro has simply not provided any evidence (beyond mere speculation) to support her claim that Disney's reasons for terminating her were pretextual, or that Disney somehow discriminated against her based on her sex/gender.

We agree with the trial court's cogent analysis and conclusion:

"[Castro] has failed to show that [Disney] had any gender-based animus in making the decision to terminate her.  [Castro] focuses on the fact that she had text messages showing Ledezma was mean to her, and that she had injuries too.  However, the whole of the texts and injuries showed that [Castro] was likely both the instigator and in-fight aggressor.  Even if reasonable minds might find fault inconclusive, it does not matter for present purposes who the actual aggressor was.  [Castro] was an at-will employee, and could have been terminated for no reason at all.  It is her burden to show that the termination was motivated by gender animus, and here [Castro] falls flat.  All five of the non-percipient witnesses providing written statements were female . . . .  The lead investigator . . . was female . . . .  The decision-maker . . . was female . . . .[2]

"There is simply no hint anywhere that [Disney] made the decision to fire [Castro] based on a disdain, or distrust, of females.  [Disney] made a reasonable good faith inquiry, and an understandable disciplinary decision based thereon.  Given [Castro's] unblemished work history leading up to the fight, it may have been more acceptable for [Disney] to impose a lesser penalty coupled with a shift adjustment - but that it not the litmus.  The decision re penalty was within [Disney's] business judgment to make, so long as gender did not play a role.  From the evdence presented, it did not."

---

[2] Castro argues the court erred by taking "into consideration the gender of the non-percipient witnesses, investigator, and decision maker."  But while not legally dispositive, a common protected class between the plaintiff and decision maker permits a reasonable inference that discrimination is less likely. (*Estate of Bassatt v. School Dist. No.1 in the City* (10th Cir. 2014) 775 F.3d 1233, 1241.)

*B. Retaliation for Protected Activity*

It is unlawful "[f]or any employer . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (§ 12940, subd. (h).)  To state a claim of retaliation under FEHA, a plaintiff must show (1) she engaged in a protected activity, (2) she was subjected to an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action.  (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 941-942.)

To constitute a "protected activity," an employee must have opposed an employment practice FEHA makes unlawful.  (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 381.)  "The protected activity element may be established by evidence that the plaintiff threatened to file a discrimination charge [citation], by a showing that the plaintiff mistakenly, but reasonably and sincerely believed he was opposing discrimination [citation], or by evidence an employer believed the plaintiff was a potential witness in another employee's FEHA action [citation].  The determination as to what constitutes a protected activity is inherently fact driven."  (*Rope v. Auto-Chlor System of Washington, Inc*. (2013) 220 Cal.App.4th 635, 652, abrogated by statute on other grounds.)

In her pleading, Castro alleged that Disney "retaliated against [her] by terminating [her] employment after she complained about defendant Ledezma physically attacking her."  Apparently, the "complaint" Castro is referring to is her written and oral statements in which she accused Ledezma of being the aggressor.

But we fail to see how Castro's purported "protected activity"—a complaint to Disney that Ledezma allegedly attacked her at work—could conceivably constitute a complaint about, or opposition to, any kind of forbidden employment practice *on the part of Disney*.  As accurately described by the trial court:  "Every report provided

8

by [Castro] described the fight as personal. [Castro] went to great lengths to show that Ledezma was a bad boyfriend, that he was verbally abusive in the relationship, and that he was a crazy jealous individual bent on making [Castro] suffer. Nothing about [Castro's] reporting said to [Disney] that Ledezma (or anyone for that matter) should be investigated for discrimination in the workplace. This was entirely about who was the instigator/aggressor in the fight—nothing else."

Again, we agree with the trial court's analysis: "Although [Castro] contends that reporting the altercation with Ledezma put a protective umbrella over her, there is nothing in FEHA covering mutual combat between two employees over personal matters." In sum, Castro did not engage in a "protected activity." Thus, she cannot prove an essential element of FEHA retaliation, and summary judgment is appropriate.

## C. *Failure to Prevent Discrimination and Wrongful Termination*

It is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).) But an employee cannot maintain a cause of action for failure to prevent discrimination when the discrimination itself cannot be proven. (See *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1317-1318 ["There cannot be a claim for failure to take reasonable steps necessary to prevent sex discrimination under section 12940, subdivision (k) if actionable sex discrimination has not been found"].)

The elements of wrongful termination are "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 154.) But a cause of action for wrongful termination cannot be maintained when it based on the same conduct alleged in an unsupported FEHA claim. (See *Hanson v. Lucky Stores, Inc*. (1999) 74

9

Cal.App.4th 215, 229 [because "[plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails"].)

Castro's cause of action alleging Disney's failure to prevent discrimination cannot proceed because her discrimination claim is unsupported. Similarly, Castro's cause of action for wrongful termination by Disney cannot proceed because it is based on the same conduct as alleged in her unsupported FEHA claims.


III

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Disney.



MOORE, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.